GRAY v LIBERTY MUTUAL INSURANCE COMPANY

Docket No. 82163. Submitted November 12, 1985, at Detroit.—Decided
February 19, 1986. Leave to appeal applied for.

Plaintiff, James Gray, brought an action in the Wayne Circuit
Court against defendant, Liberty Mutual Insurance Company,
alleging that the defendant wrongfully denied his claim for no-
fault benefits allegedly due for injuries incurred during the
course of his employment as a package driver for United Parcel
Service. Plaintiff received workers' compensation benefits as a
result of the injuries which were sustained while his vehicle
was parked. Defendant filed a motion for summary judgment
on the ground that plaintiff's injuries were excluded from
coverage under § 3106(2) of the no-fault act. The trial court,
Joseph B. Sullivan, J., granted the motion and entered an order
to that effect. Plaintiff appeals. *Held:*

1. The April 4, 1983, incident occurred while plaintiff was
"unloading" his vehicle within the meaning of § 3106(2). The
trial court did not err in concluding that plaintiff was pre-
cluded from no-fault benefits under § 3106(2) and in granting
summary judgment on this ground for defendant in regard to
the April 4, 1983, incident.

2. Plaintiff's activity on March 28, 1983, was an act prepara-
tory to the unloading of goods for delivery and fell within
§ 3106(2) as loading and unloading activities in the course of
plaintiff's employment. The trial court did not err in granting
summary judgment in regard to the March 28, 1983, incident.

Affirmed.

1. INSURANCE — NO-FAULT INSURANCE — LOADING AND UNLOADING
— PARKED VEHICLE.

Accidental bodily injury does not arise out of the ownership,
operation, maintenance, or use of a parked vehicle as a motor
vehicle if benefits under the Worker's Disability Compensation
Act of 1969 are available to an employee who sustains the

REFERENCES

Am Jur 2d, Automobile Insurance §§ 205-216, 340 *et seq.*
Risks within "loading and unloading" clause of motor vehicle
liability insurance policy. 6 ALR4th 686.

injury in the course of his or her employment while loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle (MCL 500.3106[2]; MSA 24.13106[2]).

2. INSURANCE — NO-FAULT INSURANCE — LOADING AND UNLOADING — PARKED VEHICLE.

The terms "loading" and "unloading" a parked vehicle are to be interpreted broadly to include activities preparatory to the actual loading or unloading of goods for purposes of subsection 3106[2] of the no-fault act which denies benefits in certain situations where the injured employee is eligible for workers' compensation benefits as a result of the injury (MCL 500.3106[2]; MSA 24.13106[2]).

3. INSURANCE — NO-FAULT INSURANCE — LOADING AND UNLOADING — PARKED VEHICLE.

The intent of subsection 3106[2] of the no-fault act which denies benefits in certain situations where the injured employee is eligible for workers' compensation benefits as a result of an injury is to eliminate the duplication of benefits for work-related injuries which do not arise out of the actual driving or operation of a motor vehicle (MCL 500.3106[2]; MSA 24.13106[2]).

*Marshall Lasser,* for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin),* for defendant.

Before: GRIBBS, P.J., and HOOD and A. T. DAVIS,* JJ.

PER CURIAM. Plaintiff appeals from a circuit court order granting defendant's motion for summary judgment pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10), on plaintiff's claim that defendant wrongfully denied his claim for no-fault benefits allegedly due for injuries incurred during the course of his employment as a package driver for United Parcel Service (UPS). We affirm.

Plaintiff's job as a UPS driver was to pick up

---

* Circuit judge, sitting on the Court of Appeals by assignment.

and deliver packages on a standard daily route using trucks owned by UPS. His route required him to make stops every morning at Kmart and Service Merchandise. In getting his truck organized for the next stop, plaintiff would sometimes have to lift packages in order to rearrange them.

On March 25, 1983, while plaintiff was at Kmart, he strained his lower back when he bent over to pick up some packages which had fallen on the truck floor. The packages he picked up were to be delivered to his next stop. Due to this injury, he took off the rest of the day and returned to work the next working day. On April 4, 1983, while again stopped at Kmart, plaintiff was bending over to pull off some packages underneath the shelf when he felt a pain similar to the one he experienced on March 25, 1983. The package he was moving at the time was to be delivered at Kmart.

Plaintiff filled out a company accident form indicating that the disability arose out of the accidents on both dates. UPS filled out a workers' compensation form indicating the date of injury as March 25, 1983. Plaintiff was off work from April 4 through May 12, 1983, and collected workers' compensation benefits for that period of time. Plaintiff continued to complain of pain and eventually was found to be disabled from working by the Emergency Industrial Clinic as of September 1, 1983. Workers' compensation benefits have been paid since that date and were still being paid at the time of plaintiff's deposition on July 25, 1984.

Defendant filed a motion for summary judgment on the ground that plaintiff's injuries were excluded from no-fault coverage by MCL 500.3106(2); MSA 24.13106(2), which provides:

"(2) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked

vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws, are available to an employee who sustains the injury in the course of his or her employment while loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle."

The circuit court granted defendant's motion and entered an order to that effect on December 7, 1984.

The sole issue in this case is whether plaintiff's injuries, which arose in the course of his employment, occurred while plaintiff was "loading" or "unloading" the parked UPS vehicle within the meaning of MCL 500.3106(2); MSA 24.13106(2). This Court has recently considered the meaning of the "loading" and "unloading" language of MCL 500.3106(2); MSA 24.13106(2). In *Bell v F J Boutell Driveaway Co,* 141 Mich App 802; 369 NW2d 231 (1985), and its companion case, *Jones v ANR Freight System,* this Court construed these terms broadly to include activities preparatory to the actual loading or delivering of goods. In *Bell,* plaintiff Bell drove a load of cars to a car dealership and began to lower a portion of his tractor-trailer in preparation for the unloading of the cars he was delivering. He removed chains securing one of the cars to the trailer and was walking on the trailer to another location to remove the chain on the other axle of the car when he slipped and fell on hydraulic fluid leaking from the trailer. He was injured in the fall and received workers' compensation benefits for the period of time he was disabled from the injury. In *Jones,* plaintiff Jones worked as a truck driver for ANR Freight System and Associated Truck Lines, Inc., and Jones had

driven a truck to Ohio to make a delivery. Jones injured himself when he pushed or pulled some freight from the middle of the tractor-trailer to the rear in order to position it for a dock worker to lower the freight with a fork-lift. Jones, an Ohio resident, received Ohio workers' compensation benefits while he was disabled from the injury.

In both cases, this Court held that plaintiffs' activities constituted "unloading" within the meaning of subsection 3106(2) because plaintiffs' activities were preparatory to the actual unloading and delivery of property. The Court, after reviewing the legislative purpose and history of this subsection, reasoned:

"We conclude that the Legislature intended to eliminate duplication of benefits for work-related injuries except where the actual driving or operation of the *motor vehicle* is involved. Therefore, we find it appropriate to broadly interpret the terms 'loading' and 'unloading' in subsection (2) because by doing so the statute further eliminates duplication of benefits for work-related injuries that do not relate to the actual driving or operation of a motor vehicle." 141 Mich App 810-811.

In the instant case, plaintiff's injury on April 4, 1983, occurred while plaintiff was moving freight in the process of unloading it at Kmart. Plaintiff's activities were thus preparatory to the actual unloading, and would fall within *Bell*'s broad definition of the term "unloading" of subsection 3106(2). We agree with this Court's reasoning and decision in *Bell* and find that the April 4 incident occurred while plaintiff was "unloading" within the meaning of subsection 3106(2). Thus the circuit court did not err in finding that plaintiff was precluded from no-fault benefits under MCL 500.3106(2); MSA 24.13106(2) and in granting sum-

mary judgment on this ground for defendant in regard to the April 4, 1983, incident.

With respect to the earlier incident on March 28, 1983, we recognize that plaintiff's picking up of fallen packages to be delivered at his next stop was less directly connected to the process of unloading than plaintiff's pulling out of packages to be delivered during the April 4, 1983, incident. However, we find that plaintiff's activity on March 28, 1983, was still an act preparatory to the unloading of goods. The rationale articulated in *Bell, supra,* in support of a broad interpretation of the terms "loading" and "unloading", also supports a broad construction of which activities constitute activities preparatory to actual loading or unloading. The intent of subsection 3106(2) is to eliminate duplication of benefits for work-related injuries which do not arise out of the actual driving or operation of the motor vehicle. *Bell, supra,* pp 810-811. In the instant case, plaintiff's injuries did not arise out of the actual driving or operation of his motor vehicle, but arose from activities within the parked vehicle in preparation of unloading at the next stop. Moreover, interpreting plaintiff's activities of March 28, 1983, as activities preparatory to unloading would further the legislative intent in eliminating the duplication of benefits which plaintiff has received for his work-related injuries. Thus we find that the activities of plaintiff on March 28, 1983, were acts preparatory to the actual unloading of packages for delivery and thus fell within subsection 3106(2) as loading or unloading activities in the course of plaintiff's employment. Plaintiff was therefore not entitled to no-fault benefits pursuant to subsection 3106(2) and the circuit court did not err in granting defendant's motion for summary judgment in regard to the March 28, 1983, incident.

Affirmed.