LEE v NATIONAL UNION FIRE INSURANCE COMPANY

Docket No. 153495. Submitted July 6, 1994, at Detroit. Decided October 17, 1994, at 9:45 A.M.

Robert E. Lee brought an action in the Wayne Circuit Court against National Union Fire Insurance Company, seeking no-fault personal protection insurance benefits for an injury for which he had received worker's compensation benefits. In the course of his employment as a driver of a tractor-trailer on which motor vehicles are shipped, the plaintiff noticed that one of the vehicles had broken loose from its restraints. The plaintiff stopped at a rest area and secured the vehicle. He then stepped on the fuel tank of the tractor to reenter the cab, but slipped and fell, hitting his back and shoulders on the fuel tank. The court, Helene N. White, J., granted summary disposition for the defendant, ruling that the plaintiff, pursuant to MCL 500.3106(2)(a) and (b); MSA 24.13106(2)(a) and (b), was ineligible for no-fault benefits. The plaintiff appealed.

The Court of Appeals *held:*

Under § 3106(2), accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if worker's compensation benefits are available to an employee who sustains the injury in the course of employment while loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle, or while entering into or alighting from the vehicle unless the injury was sustained while entering into or alighting from the vehicle immediately after the vehicle became disabled.

In this case, injury was not sustained while entering into a disabled vehicle and it was sustained in the course of the loading and unloading process.

Affirmed.

REFERENCES

Am Jur 2d, Automobile Insurance §§ 127, 136, 368.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

What constitutes "entering" or "alighting from" vehicle within meaning of insurance policy, or statute mandating insurance coverage. 59 ALR4th 149.

INSURANCE — NO-FAULT — PARKED VEHICLES — ACCIDENTAL BODILY INJURY — WORKER'S COMPENSATION.

A tractor-trailer whose cargo needs to be secured by its driver after partially breaking free of its restraints is not a disabled vehicle for purposes of the no-fault act provision that allows no-fault benefits for an injury that is compensable by worker's compensation if the injury is sustained while entering into or alighting from a vehicle immediately after the vehicle becomes disabled (MCL 500.3106[2][b]; MSA 24.13106[2][b]).

*Ogne, Alberts & Stuart, P.C.* (by *Jeffrey Bullard* and *Michael A. Ross*), for the plaintiff.

*Richard A. Kudla & Associates* (by *Victoria P. Lupo*) (*Gross & Nemeth,* by *James G. Gross* and *Paul Kaliszewski,* of Counsel), for the defendant.

Before: GRIBBS, P.J., and REILLY and T. L. BROWN,* JJ.

PER CURIAM. Plaintiff appeals as of right from an order granting summary disposition and dismissal to defendant pursuant to MCR 2.116(C)(8). We affirm.

Plaintiff was injured on October 3, 1989, while operating a tractor-trailer that was transporting motor vehicles to Chicago, Illinois. While in transit, plaintiff noticed that one of the vehicles had broken loose of its restraints and was bumping into the rear of the cab. He stopped at a rest area to reattach and tighten the restraints. After finishing, he stepped onto the fuel tank to get back into the cab and slipped. As he fell to the ground, he hit his back and shoulders on the edge of the fuel tank.

Plaintiff received worker's compensation benefits for his injuries. In addition, he received no-fault personal injury protection (PIP) benefits from defendant for a period of time. Defendant discontin-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ued benefits pursuant to MCL 500.3106(2); MSA 24.13106(2). Thereafter, on September 11, 1991, plaintiff commenced this lawsuit for reinstatement of PIP benefits.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and argued that plaintiff was not entitled to no-fault benefits because, at the time he sustained his injuries, he was attempting to climb from the trailer into the cab and, therefore, was still in the loading and unloading process. In the alternative, defendant argued that plaintiff sustained his injuries while "entering into" his parked motor vehicle.

Plaintiff filed a cross-motion for summary disposition pursuant to MCR 2.116(C)(10) and argued that he had completed the loading process and was injured while entering into the cab immediately after his vehicle had become disabled.

Both parties agree that the applicable law is MCL 500.3106(2)(a) and (b); MSA 24.13106(2)(a) and (b), which provides:

> Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969, Act No. 317 of the Public Acts of 1969, as amended, being sections 418.101 to 418.941 of the Michigan Compiled Laws, or under a similar law of another state or under a similar federal law, are available to an employee who sustains the injury in the course of his or her employment while doing either of the following:
>
> (a) Loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle. As used in this subdivision, "another vehicle" does not include a motor vehicle being loaded on, unloaded from, or secured to, as cargo or freight, a motor vehicle.
>
> (b) Entering into or alighting from the vehicle

unless the injury was sustained while entering into or alighting from the vehicle immediately after the vehicle became disabled. This subdivision shall not apply if the injury arose from the use or operation of another vehicle. As used in this subdivision, "another vehicle" does not include a motor vehicle being loaded on, unloaded from or secured to, as cargo or freight, a motor vehicle.

In granting defendant's motion for summary disposition, the trial court determined that the Legislature had intended to provide no-fault benefits only in those situations where the "disability" is vehicular in nature. The court found the exception for a "disabled" vehicle under subsection b requires some sort of motor vehicle disability and does not contemplate or permit recovery where a worker must pull off the road to adjust the load but there is nothing wrong with the vehicle itself. The trial court found plaintiff's vehicle was not "disabled," and granted summary disposition on that basis.

On appeal, plaintiff argues that the trial court erroneously interpreted the meaning of "disabled." Michigan appellate courts have not yet construed the meaning of the word "disabled" in subsection b of the statute. Thus, this is an issue of first impression.

The goal of statutory construction is to ascertain and give effect to the intent of the Legislature in enacting the statute. When applying any legislation, it must first be determined whether the language of the statute is clear and unambiguous. Where the language is clear and unambiguous, no judicial interpretation is warranted. *Rowell v Security Steel Processing Co,* 445 Mich 347, 352-353; 518 NW2d 409 (1994).

If the meaning of a statute is unclear, a court must consider the object of the statute and apply a

reasonable construction that best accomplishes the Legislature's purpose. *Id.,* 353-354. If reasonable minds can differ with regard to the meaning of a statute, judicial construction is appropriate. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). The Court finds that reasonable minds can differ with respect to the meaning of "disabled vehicle." Thus, judicial construction is appropriate.

The no-fault insurance act is remedial in nature. No-fault benefits are payable for certain accidental bodily injuries arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. MCL 500.3105; MSA 24.13105; *Thompson v TNT Overland Express,* 201 Mich App 336, 339; 505 NW2d 918 (1993). The act must be liberally construed in favor of those for whom benefit was intended, i.e., persons injured in automobile accidents. *Burk v Warren,* 105 Mich App 556, 566; 307 NW2d 89 (1981), modified on other grounds 417 Mich 959; 360 NW2d 585 (1983).

In order to discern legislative intent regarding the meaning of "disabled" in subsection b of the statute, it is helpful to consider this Court's interpretation of "loading and unloading" as used in subsection a of the statute. This Court has adopted a broad definition of "loading and unloading" to include acts incidental to both the preparation and completion of the loading and unloading process. Thus, the Court has interpreted the language of the statute to limit the incidents where double coverage would be received by a worker who is injured while loading and unloading. The Legislature intended to eliminate duplication of benefits for work-related injuries except where the actual driving or operation of a motor vehicle is involved. *Thompson, supra; Bell v F J Boutell Driveaway Co,* 141 Mich App 802, 810; 369 NW2d 231 (1985).

This Court has also determined that the phrase "doing mechanical work" must be liberally interpreted to include repairing a defect, performing preventive maintenance, or making an adjustment to alter operating characteristics. *Cobb v Liberty Mutual Ins Co,* 164 Mich App 66, 72-73; 416 NW2d 328 (1987).

Section 3106(2)(b) provides that in order to collect no-fault benefits in addition to worker's compensation benefits, the person must be injured while entering or alighting from the vehicle after the vehicle became disabled. MCL 500.3106(2)(b); MSA 24.13106(2)(b). The Legislature intended to limit recovery so that an employee could not collect no-fault benefits in addition to worker's compensation benefits except where the vehicle was "disabled" and the employee was injured while entering or alighting from it.

In the case at bar, plaintiff contends his vehicle was disabled because its unstable cargo placed him, the public, and the vehicle in danger. In support of this argument, plaintiff relies on *Mahdesian v Wausau Ins Co,* 742 F Supp 1352 (ED Mich, 1990), which is factually similar to this case. Therein, the district court, upon reconsideration of its opinion and order in *Mahdesian v Wausau Ins Co,* 742 F Supp 1348 (ED Mich, 1990), held that where the chains that secured the load of the plaintiff's tractor-trailer broke or came loose,

> the heavy load became a potential danger to the driver, the public and the vehicle. This Court finds the unstable load disabled the vehicle and prevented further operation. Without secure chains, the vehicle cannot be properly operated. [*Id.,* 1355.]

This Court is not bound by federal precedent, *People v Finley,* 431 Mich 506, 514; 431 NW2d 19

(1988), and we are not persuaded that the rationale of *Mahdesian* reflects the intent of the Legislature. Instead, we hold that the trial court's definition of "disabled," which requires a disability of the motor vehicle itself, furthers the legislative intent to limit the situations under which double coverage is permitted to those involving the actual driving or operation of a motor vehicle.

We agree that a dangerous situation may be created when a load being carried by a vehicle becomes loose. Federal and state regulations require the driver to stop and periodically check the securing devices in order to prevent such dangers. *Crawford v Allstate Ins Co,* 160 Mich App 182, 188; 407 NW2d 618 (1987); *Mahdesian, supra,* 1355. Thus, drivers who stop to adjust their loads are fulfilling an obligation of their job. We are unable to conclude that a vehicle is "disabled" under those circumstances. Accordingly, we affirm the circuit court's determination that "disabled," for purposes of MCL 500.3106(2)(b); MSA 24.13106(2)(b), requires some sort of motor vehicle disability and does not contemplate or permit recovery under circumstances where the driver is required to stop and adjust or secure the cargo.

We further hold that defendant sustained his injuries during the loading and unloading process. *Raymond v Commercial Carriers, Inc,* 173 Mich App 290, 294; 433 NW2d 342 (1988); *Crawford v Allstate Ins Co,* 160 Mich App 182, 186-187; 407 NW2d 618 (1987).

Affirmed.